**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| PATRICK AYERS, Derivatively on behalf of DOMINO'S PIZZA, INC., | Civil Action No. |
| Plaintiff, | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| v. | |
| RUSSELL WEINER, DAVID A. BRANDON, C. ANDREW BALLARD, ANDREW B. BALSON, CORIE S. BARRY, DIANA F. CANTOR, RICHARD L. FEDERICO, JAMES A. GOLDMAN, PATRICIA E. LOPEZ, and SANDEEP REDDY, | |
| Defendants, | **JURY TRIAL DEMANDED** |
| and | |
| DOMINO'S PIZZA, INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Patrick Ayers ("Plaintiff"), by his attorneys, brings this Complaint derivatively on behalf of Nominal Defendant Domino's Pizza, Inc. ("Domino's" or the "Company"). Plaintiff bases his allegations on personal knowledge and, as to all other matters outside his personal knowledge, upon information and belief based on the investigation of counsel, which includes without limitation: (i) review and analysis of public filings with the United States Securities and

1

Exchange Commission ("SEC"); (ii) review and analysis of filings in state and federal court, including pleadings in the related securities fraud class action, *Bender v. Domino's Pizza, Inc. et al.*, No. 2:24-cv-12477-LVP-APP (the "Securities Class Action"); and (iii) review and analysis of press releases, news reports, analysis reports, industry reports, investor conference call transcripts, and other information available in the public domain.

## NATURE OF THE ACTION

1.       This is a stockholder derivative action brought for the benefit of nominal defendant Domino's against certain of its current and former officers and directors for breaches of fiduciary duty during the period from at least December 7, 2023 to the present (the "Relevant Period"). Domino's has suffered and will continue to suffer significant financial and reputational harm because of the wrongs committed by, among others, the Company's Board of Directors ("Board")—comprised of the Individual Defendants—as described below.

2.       Domino's, through its subsidiaries, operates as a global pizza company in three segments: U.S. Stores, International Franchise, and Supply Chain. Domino's offers pizzas and other food products under the Domino's brand name through Company-owned and franchised stores.  The Company's largest "master franchisee"—i.e., a franchisee that is charged with developing a geographical area and may profit by sub-franchising and selling food and equipment to those sub-franchisees—is Domino's Pizza Enterprises ("DPE").  As of December 31, 2023, DPE operated 3,840 stores in 12 international markets, accounting for approximately 28% of the Company's international store count and 19% of its global store count

3.       In December 2023, Domino's hosted its 2023 Investor Day, during which the Individual Defendants caused the Company to provide new long-term guidance of "1,100+" annual global net store growth for the years 2024 to 2028.

4.      On July 18, 2024, the Individual Defendants caused Domino's to issue a press release announcing the Company's second quarter 2024 financial results.  Among other items, Domino's disclosed that it "expects it will fall 175 to 275 stores below its 2024 goal of 925+ net stores in international primarily as a result of challenges in both openings and closures being faced by Domino's Pizza Enterprises ('DPE'), one of its master franchisees."  Accordingly, "[t]he Company is temporarily suspending its guidance metric of 1,100+ global net stores until the full effect of DPE's store opens and closures on international net store growth are known."  On an earnings call held that same day to discuss the Company's results (the "Q2 2024 Earnings Call"), the Company's Chief Financial Officer ("CFO") Defendant Sandeep Reddy ("Reddy") further revealed that the long-term guidance announced at the 2023 Investor Day did not accurately reflect the extent of DPE's challenges with respect to new store openings and closures of existing stores.

5.      On this news, Domino's stock price fell $64.23 per share, or 13.57%, to close at $409.04 per share on July 18, 2024.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7.      This Court has jurisdiction over each Defendant because they reside in this district or have sufficient minimum contacts with this district to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state, has consented to service in this state and its principal place of business is within this district.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides in or maintains offices in this district, a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' (defined below) primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Domino's occurred in this district, and Individual Defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

**PARTIES**

9.      Plaintiff is a current shareholder of Domino's and has continuously held Domino's common stock since December 7, 2023.  Plaintiff is a citizen of Pennsylvania.

10.      Nominal party Domino's is a Delaware corporation that maintains its principal executive offices at 30 Frank Lloyd Wright Drive, Ann Arbor, Michigan.  The Company's common stock trades on the New York Stock Exchange under the ticker symbol "DPZ."

11.      Defendant Russell Weiner ("Weiner") has served as a director of the Company since 2022 and as the Chief Executive Officer of Domino's since 2022.  Upon information and belief, Weiner is a citizen of Michigan.

12.      Defendant David A. Brandon ("Brandon") has served as a director since 1999 and the Board's Executive Chairman since 2022.  Upon information and belief, Brandon is a citizen of Michigan.

13.      Defendant C. Andrew Ballard ("Ballard") has served as a director of the Company since 2015. Upon information and belief, Ballard is a citizen of California.

14.      Defendant Andrew B. Balson ("Balson") served as a director of the Company since 1999.  Upon information and belief, Balson is a citizen of Massachusetts.

15.     Defendant Corie S. Barry ("Barry") has served as a director of the Company since 2018.  Upon information and belief, Barry is a citizen of Minnesota.

16.     Defendant Diana F. Cantor ("Cantor") has served as a director of the Company since 2005.  Upon information and belief, Cantor is a citizen of Virginia.

17.     Defendant Richard L. Federico ("Federico") has served as a director of the Company since 2011 and is the Chair of the Board's Audit Committee.  Upon information and belief, Federico is a citizen of Arizona.

18.     Defendant James A. Goldman ("Goldman") served as a director of the Company since 2010.  Goldman is a member of the Board's Audit Committee.  Upon information and belief, Goldman is a citizen of New York.

19.     Defendant Patricia E. Lopez ("Lopez") has served as a director of the Company since 2018. Lopez is a member of the Board's Audit Committee.  Upon information and belief, Lopez is a citizen of New York.

20.     Defendant Sandeep Reddy ("Reddy") has served as Domino's CFO at all relevant times.  Upon information and belief, Reddy is a citizen of Michigan.

21.     Defendants Ballard, Balson, Brandon, Barry, Weiner, Cantor, Federico, Goldman, Lopez, and Reddy, collectively, are referred to as "Individual Defendants."

22.     Defendants Federico, Goldman, and Lopez, collectively, are referred to as "Audit Committee Defendants."

### INDIVIDUAL DEFENDANTS' DUTIES

23.     By reason of their positions as officers, directors, and/or fiduciaries of Domino's, and because of their ability to control the business and corporate affairs of Domino's, the Individual Defendants owed Domino's and its shareholders fiduciary obligations of good faith,

loyalty and candor, and were and are required to use their utmost ability to control and manage Domino's in a fair, just, honest and equitable manner.

24.     Further, Individual Defendants were and are required to act in furtherance of the best interests of Domino's and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest and benefit.  Each director and officer of the Company owes to Domino's and its shareholders the fiduciary duty to exercise good faith and due diligence in the administration of the Company's affairs, and in the use and preservation of its property and assets, as well as the highest obligation of fair dealing.

25.     Because of their positions of control and authority as directors and/or officers of Domino's, having knowledge of material non-public information regarding the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  To discharge their duties, the officers and directors of Domino's were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties the officers and directors of Domino's were required to, among other things:

      a.      Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

      b.      Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner, and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public; and

      c.      When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

26.     As members of the Company's Audit Committee, the Audit Committee Defendants were charges with, inter alia, the following responsibilities:

Risk Assessment

(1)   Assess, review, evaluate and discuss with management the Company's risk assessment and risk management policies and program.

(2)   Receive a presentation from management/internal auditor on the Company's annual risk assessment and review risk management items as necessary with management or the internal audit director, as applicable.

(3)   Receive periodic updates from management and the information security team relating to the Company's information systems security.

Oversight of the Company's Compliance Program

(1)   Review the process of communicating the Company's Code of Business Conduct and Ethics to team members and the Code of Professional Ethics for Senior Financial Officers to finance team members and the process for overseeing team member compliance and procedures for the receipt, retention and treatment of complaints relating thereto.

(2)   Review compliance with and the process of assuring the Company's compliance with laws and regulations, including, but not limited to, applicable Nasdaq Stock Market listing standards, SEC rules and regulations, the Foreign Corrupt Practices Act, the Sarbanes Oxley Act of 2002 and the Dodd-Frank Wall Street Reform and Consumer Protection Act.

## SUBSTANTIVE ALLEGATIONS

27.     On December 7, 2023, Domino's hosted its 2023 Investor Day.  During that event, in a presentation slide, the Individual Defendants provided new long-term guidance of "1,100+" annual global net store growth for the ears 2024 to 2028:

28.     On February 26, 2024, the Individual Defendants caused Domino's to issue a press release announcing the Company's fourth quarter and fiscal year 2023 financial results.  The press release stated, in relevant part:

> "Our strong fourth quarter demonstrates that our Hungry for MORE strategy is already delivering results. This strategy, which we recently unveiled at our Investor Day, is our plan to deliver MORE sales, MORE stores and MORE profits," said Weiner[.] "Domino's foundation has never been stronger. Our positive U.S. transactions and same store sales growth in both our delivery and carryout channels in the fourth quarter underscore the strength and momentum in our business. These results give us confidence in our brand and the Company's ability to win and create meaningful value for our shareholders."
>
> ***
>
> Long-Term Guidance (2024 – 2028)
>
> The Company hosted its Investor Day on December 7, 2023, and announced the following long-term guidance metrics that the Company continues to expect to achieve. Annual global retail sales growth and annual income from operations growth exclude the impact of foreign currency.
>
> • 7%+ Annual global retail sales growth;
>
> • 1,100+ Annual global net store growth;

- 8%+ Annual income from operations growth.

29.     That same day, the Individual Defendants caused Domino's to file the Company's Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the fiscal year ended December 31, 2023 (the "2023 10-K").   In discussing the Company's business segments, the 2023 10-K stated, in relevant part:

U.S. Franchise Profile

As of December 31, 2023, our network of 6,566 U.S. franchise stores was owned and operated by 735 independent U.S. franchisees. Our franchise formula enables franchisees to benefit from our brand recognition with a relatively low initial capital investment. As of December 31, 2023, the average U.S. franchisee owned and operated approximately nine stores and had been in our franchise system for over 17 years. Additionally, 22 of our U.S. franchisees operated more than 50 stores (including our largest U.S. franchisee who operated 143 stores) and 209 of our U.S. franchisees each operated one store as of December 31, 2023.

We apply rigorous standards to prospective U.S. franchisees. We generally require them to manage a store for at least one year and graduate from our franchise management school program before being granted the right to franchise. This enables us to observe the operational and financial performance of a potential franchisee prior to entering into a long-term agreement. Substantially all of our independent U.S. franchise owners started their careers with us as delivery drivers or in other in-store positions, which we believe offers advantages in terms of familiarity with our business and store operations. In addition, we generally restrict the ability of U.S. franchisees to be involved in other businesses, which we believe helps focus our franchisees' attention on operating their stores. *We believe these characteristics and standards are largely unique within the franchise industry and have resulted in qualified and focused franchisees operating Domino's stores*. We maintain a productive relationship with our independent franchise owners through regional franchise teams, distributing materials that help franchise stores comply with our standards and using franchise advisory groups that facilitate communications between us and our franchisees. We consider our relationship with our U.S. franchisees to be good.

(emphasis added).

30.     Finally, in discussing the Company's purported strengths, the 2023 10-K stated, in relevant part:

### Strong and Proven Business Model

Our business model generates U.S. and international franchise royalties and fees, supply chain revenues and retail sales at Company-owned stores. We have developed this model over our many years of operation, and it is anchored by strong store-level economics, which provide an entrepreneurial incentive for our franchisees and historically has generated strong demand for new stores. Over the past ten years, average U.S. store profitability in the Domino's system has increased meaningfully, resulting in higher profitability for our franchise owners. ***Our franchise system, in turn, has produced strong and consistent earnings for us through royalty and fee payments and through supply chain gross margins.***

We developed a cost-efficient store model, characterized by a delivery and carryout-oriented store design, with moderate capital requirements and a menu of quality, value-oriented and affordable items. At the store level, we believe the simplicity and efficiency of our operations give us significant advantages over our competitors, who, in many cases, also focus on dine-in or have broader menu offerings. At the supply chain level, we believe we provide quality, good value and consistency for our franchise customers while also driving profits for us, which we share with our franchisees under the profit-sharing arrangements described above.

***

***We believe our store financial returns have led to a strong, well-diversified franchise system. This established franchise system has produced strong cash flows and earnings for us, enabling us to invest in the Domino's brand, stores, technology and supply chain centers, pay dividends, repurchase and retire shares of our common stock and service our debt obligations***.

31.     Also on February 26, 2024, the Individual Defendants hosted an earnings call with investors and analysts to discuss the Company's 2023 fourth quarter results (the "Q4 2023 Earnings Call").  During the scripted portion of the Q4 2023 Earnings Call, Defendant Weiner stated, in relevant part:

Our strong Q4 demonstrated that our Hungry for MORE strategy is already delivering results. Our positive U.S. same-store sales and transaction growth in both delivery and carryout underscore the strength and momentum that we're building in our business. These results and the initiatives that I'll cover today give me confidence in Domino's ability to continue to drive meaningful value for shareholders.

We're excited to share an update on the business through the lens of our Hungry for MORE strategy. Now as a reminder, Hungry for MORE is our new strategy around what we're going to do to deliver over the course of the next five years, more sales, more stores and more profits.

***

We ended 2023 slightly ahead of our expectations on U.S. store growth and profits, adding 168 net new stores and finishing the year with estimated average franchisee profitability per store of $162,000. This highlights the momentum we expect to continue into 2024. I couldn't be more excited about 2024 and beyond for Domino's Pizza. Our foundation has never been stronger and our vision has never been greater. We made a ton of progress in 2023 and our strong start to '24 gives me confidence in our ability to win with customers and drive return for Domino's franchisees and shareholders.

32.     Also during the scripted portion of the Q4 2023 Earnings Call, Defendant Reddy stated, in relevant part:

> *Now shifting to net stores, where we are expecting 1,100 or more, which will be driven by 175 in the U.S. and 925 in international. There was a meaningful uptick in our U.S. net store growth in the fourth quarter, which was slightly ahead of our expectations, and the pipeline continues to build*. We are expecting net unit growth in the U.S. to be relatively flat to 2023 in the first half of the year and to accelerate slightly in the back half based on current visibility.

33.     Further, during the Q&A portion of the Q4 2023 Earnings Call, when asked to discuss the Company's "confidence in [] accelerating on a global basis" and "what that looks like from a domestic and international standpoint," Defendant Weiner responded, in relevant part:

> We still feel really strongly about the guidance we gave, the 1,100 plus stores and 5,500 over the next five years. I mean you saw some really nice momentum at the end of the year in the U.S. in 2023. We expect to see more at the end of the year in 2024. Internationally, I think we've got a lot of closures behind us, that was probably one of the things that was driving down the number this year. But those closures really focused on three areas. Domino's Pizza Enterprises, and they talked about their number, Russia and Brazil.

34.     On April 29, 2024, the Individual Defendants caused Domino's to issue a press release announcing the Company's first quarter 2024 financial results. The press release stated, in relevant part:

> "Our first quarter results demonstrated that our Hungry for MORE strategy is off to a strong start: delivering MORE sales, MORE stores, and MORE profits," said [Defendant] Weiner[.] "The Renowned Value we created through our new and improved Domino's Rewards loyalty program drove outsized comp performance, which flowed through to the bottom line with double-digit profit growth.

Importantly, our growth in the U.S. came through positive order counts in both our carryout and delivery businesses for the second quarter in a row. Further, this order growth was across all income cohorts. In Q1 we also went live with marketing on Uber Eats, and we remain on track to exit the year at 3% or MORE of sales coming through this new channel. We are laser focused on driving franchisee profitability and store growth, which will fuel the Company's ability to win and create meaningful long-term value for our shareholders."

\*\*\*

Long-Term Guidance (2024 – 2028)

The Company continues to expect to achieve the following long-term guidance metrics previously announced. Annual global retail sales growth and annual income from operations growth exclude the impact of foreign currency.

- 7%+ Annual global retail sales growth;

- 1,100+ Annual global net store growth; and

- 8%+ Annual income from operations growth

35.     That same day, the Individual Defendants hosted an earnings call with investors and analysts to discuss the Company's first quarter 2024 results (the "Q1 2024 Earnings Call"). During the scripted portion of the Q1 2024 Earnings Call, Defendant Weiner stated, in relevant part:

Our Q1 results demonstrated that our Hungry for MORE strategy is delivering on its promise, driving more sales, more stores and more profit. We drove strong comp performance in the U.S. that flowed through to the bottom-line with double-digit profit growth. And our growth in the U.S. came through positive order counts across all income cohorts in both our carryout and delivery segments. We saw the largest growth in our lower-income cohorts that are undoubtedly benefiting from the renowned value that we're offering.

\*\*\*

Everything we do at Domino's is enhanced by our best-in-class franchisees, the E in our Hungry for MORE strategy. We'll be hosting thousands of franchisees for our worldwide rally in May, where we plan to bring our Hungry for MORE strategy to life across our global system. I can't wait for that gathering as our franchisees are what makes Domino's so special. They were the inspiration behind Hungry for MORE.

So to close, I couldn't be more excited about 2024 and beyond for Domino's Pizza. Our first quarter results clearly show that our strategy is resonating with customers. This gives me great confidence that, we can deliver against our short- and long-term Hungry for MORE goals and drive significant value creation for our shareholders.

### THE TRUTH EMERGES

36.     On July 18, 2024, the Individual Defendants caused the Company to issues a press release announcing the Company's second quarter 2024 financial results.  The press release stated, in relevant part:

> Long-Term Guidance (2024 - 2028)
>
> The Company continues to expect the following guidance metrics. Annual global retail sales growth and annual income from operations growth exclude the impact of foreign currency.
>
> - 7%+ Annual global retail sales growth; and
> - 8%+ Annual income from operations growth.
>
> The Company now expects the following on annual global net store growth:
>
> - Global net store growth of 825 to 925 in 2024.
> - U.S.: The Company continues to expect 175+ net stores annually for 2024 to 2028.
>
> - ***International: The Company expects it will fall 175 to 275 stores below its 2024 goal of 925+ net stores in international primarily as a result of challenges in both openings and closures being faced by Domino's Pizza Enterprises ("DPE"), one of its master franchisees. The Company is partnering closely with DPE as they work through this process and will provide further updates once it has more visibility into the effect on its annual global net store growth numbers.***
>
> - ***The Company is temporarily suspending its guidance metric of 1,100+ global net stores until the full effect of DPE's store opens and closures on international net store growth are known.***

(emphasis added).

37.     That same day, during the Q&A portion of the Q2 2024 Earnings Call, when asked to discuss the dynamic of the Company's disappointing new store guidance, Defendant Reddy responded, in relevant part:

> And so I think when you go back to the Investor Day back in December, I think one of the process that we went through was working with all of our master franchisees, including DPE, on the expectations that they had for the business. And we basically calibrated to that for both 2024 and the five-year horizon as well. And at that time, we were completely aligned. So then actually we got into the end of the Q1 call and then we got into the second quarter and we started seeing that relative to our expectations and cadence, both new store openings as well as closures, really started increasing from DPE.

> And as we saw that, we continued to engage with the DPE team to validate the forecast that we had for the year. And it became pretty clear as we actually went through that conversation and discussion that there was not only the risk to the second quarter that we were seeing, but clearly the outlook was going to be impacted as well. And in fact, just yesterday I think DPE put out a release with a number of closures that they outlined in the Japan and France market in particular, which they're targeting for their first half, which is our second half, which therefore will land in this fiscal year. So apart from what we've seen in second quarter, we expect to see more pressure in the second half of this year.

38.     Market analysts were quick to react to the announcements.  On July 18, 2024, *Reuters* published an article entitled "Domino's Pizza warns of slower Q3 sales; shares fall".  The *Reuters* article quoted a Northcoast Research analyst as stating that "[t]he market is anxious about risk going forward that this type of headwind will spread to more markets beyond Japan and France[.]"  That same day, *Bloomberg News* published an article entitled "Domino's Falls Most Since 2012 After Pulling Store-Growth Target."  The *Bloomberg News* article quoted a Citigroup Inc. analyst as stating that "[t]his unexpected update will shake investor confidence in the company's broader guidance and put pressure" on the stock.

39.     On this news, Domino's stock price fell $64.23 per share, or 13.57%, to close at $409.04 per share on July 18, 2024.

40.     At least one Company insider made out well.  Between the December 7, 2023, announcement of the Company's guidance for increased store expansion and the revelation in July 2024 that Domino's would fall far short of that goal, Weiner would sell 27,740 of his personally held shares of Domino's stock for proceeds of over $12.8 million.

## DERIVATIVE ALLEGATIONS

41.     Plaintiff brings this action derivatively in the right and for the benefit of Domino's to redress the Individual Defendants' breaches of fiduciary duties and violations of law.

42.     Plaintiff is a current Domino's stockholder, has continuously held shares of Domino's stock since December 7, 2023, and was a stockholder of Domino's at all times relevant to the wrongdoing as alleged herein.

43.     Plaintiff will adequately and fairly represent Domino's interests and those of its stockholders in enforcing and prosecuting the Company's rights.

44.     At the time this action was commenced, the Board consisted of the following nine (9) directors: defendants Brandon, Weiner, Ballard, Balson, Barry, Cantor, Federico, Goldman, and Lopez.

45.     Defendant Weiner's primary occupation throughout the conduct complained of herein was as Domino's CEO pursuant to which he has received substantial monetary compensation and other benefits.  The Board has acknowledged Weiner's lack of independence, noting in the Company's March 15, 2024 Proxy Statement filed with the SEC that Weiner cannot be classified as an independent director.

46.     Defendant Brandon is also not independent. The Board has acknowledged Brandon's lack of independence, noting in the Company's March 15, 2024 Proxy Statement filed with the SEC that Brandon cannot be classified as an independent director.

47.     As members of the Audit Committee, defendants Federico, Goldman, and Lopez face a substantial likelihood of liability for their failure to properly oversee the risk assessment function of the Audit Committee and ensure compliance with the Company's Code of Ethics.

48.     Each member of the Board faces a substantial likelihood of liability for authorizing and/or permitting false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duties

49.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.     As alleged in detail herein, each of the Individual Defendants violated and breached their fiduciary duties of loyalty and good faith by causing or allowing the Company to disseminate to Domino's shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

51.     As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's internal controls were properly functioning, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

52.     The Individual Defendants willfully ignored the pervasive problems with Domino's internal controls and practices and procedures necessary to protect the Company and failed to make a good faith effort to correct these problems or prevent their recurrence.

53.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages.  Thus, as a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

## COUNT II

### Against the Individual Defendants for Unjust Enrichment

54.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Domino's.

56.     Plaintiff, as a shareholder and representative of Domino's, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## COUNT III

### Against Defendant Weiner for Insider Selling

57.     Plaintiff, incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

58.     As CEO, Defendant Weiner owed fiduciary duties of loyalty and good faith to the Company and is bound by its Code of Conduct. Despite this, Weiner would sell 27,740 of his personally held shares of Domino's stock for proceeds of over $12.8 million between the

December 7, 2023 announcement of the Company's guidance for increased store expansion and the revelation in July 2024 that Domino's would fall far short of that goal.

59.     In his position as CEO, Weiner was aware at all relevant times of discussions with master franchisees and their potential to reach to the Company's guidance targets.

60.     Weiner made these sales while in possession of inside information that DPE was falling short of its contribution to the Company's public target for store openings and that the Company had routinely made false and misleading statements in its public disclosures, as detailed above.

61.     Weiner knew this was information the market would consider material and that it was virtually certain to harm the Company's stock price and made these sales before disclosing this material information to the public.

62.     By selling his stock while in possession of adverse, material non-public information, Defendant Weiner exploited his position, breached his fiduciary duties, and violated the Company's Code of Conduct. Because Weiner sold his stock before the non-public information in their possession could be publicly disclosed and harm the Company's stock price, Defendant Weiner improperly benefited from this breach of fiduciary duty and the Company is entitled to damages and the imposition of a constructive trust on any profits obtained thereby.

63.     Plaintiff, on behalf Domino's, has no adequate remedy at law

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Declaring that Plaintiff may maintain this derivative action on behalf of Domino's and that Plaintiff is a proper and adequate representative of the Company;

B.      Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

C.      Directing Domino's to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable law and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

D.      Awarding to Domino's restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 30, 2025     Respectfully submitted,


        **FINK BRESSACK**

        */s/ David H. Fink*
        David H. Fink (P28235)
        Nathan J. Fink (P75185)
        38500 Woodward Ave.
        Suite 350
        Bloomfield Hills, MI 48304
        Telephone: (248) 971-2500
        dfink@finkbressack.com
        nfink@finkbressack.com


        **THE WEISER LAW FIRM, P.C.**
        James M. Ficaro (application for admission to be submitted)
        John J. Gross
        Four Tower Bridge 200
        Barr Harbor Drive, Suite 400
        West Conshohocken, PA 19428
        Telephone: (610) 225-2677
        jficaro@weiserlawfirm.com
        jgross@weiserlawfirm.com

        *Counsel for Plaintiff*

## <u>DOMINO'S PIZZA, INC. VERIFICATION</u>

I, Patrick Ayers, hereby verify that I am familiar with the allegations in the Verified

Shareholder Derivative Complaint, and that I have authorized the filing of the Verified

Shareholder Derivative Complaint, and that the foregoing is true and correct to the best of

my knowledge, information, and belief.


Date: 01/30/25 _____        *Patrick Ayers* _____
                                               Patrick Ayers (Jan 30, 2025 09:43 EST)
                                               Patrick Ayers